In re PHILADELPHIA & READING COAL & IRON CO.

No. 7564.

Circuit Court of Appeals, Third Circuit.

Feb. 25, 1941.

Frank H. Heiss, of New York City (Larkin, Rathbone & Perry, of New York City, Dechert, Smith & Clark and Joseph S. Clark, Jr., all of Philadelphia, Pa., on the brief), for appellant.

Thomas Reath, of Philadelphia, Pa. (Carl W. Funk and Drinker, Biddle & Reath, all of Philadelphia, Pa., on the brief), for Philadelphia Bondholders Committee.

Allen Hunter White, of Philadelphia, Pa. (Knox Henderson, Frederic L. Ballard, and Ballard, Spahr, Andrews & Ingersoll, all of Philadelphia, Pa., on the brief), for Philadelphia Debenture Holders Committee.

Arthur Littleton, of Philadelphia, Pa., for debtor company.

Cecil B. Ruskay, of New York City (David Bortin, of Philadelphia, Pa., and Joseph Ruskay, of New York City, on the brief), for Debenture Holders Protective Committee.

Before MARIS, CLARK, and GOODRICH, Circuit Judges.

MARIS, Circuit Judge.

The Philadelphia & Reading Coal & Iron Company on February 26, 1937, filed in the District Court for the Eastern District of Pennsylvania its petition for reorganization under Section 77B of the Bankruptcy Act, 11 U.S.C.A. § 207, and on the same day the court entered an order approving the petition and continuing the debtor in possession of its properties. Shortly thereafter Central Hanover Bank & Trust Company, the trustee under a mortgage covering substantially all the properties of the debtor given to secure an issue of refunding mortgage 5% sinking fund gold bonds outstanding in the amount of $24,411,822.66, filed a petition praying that the income arising out of the mortgaged property after February 26, 1937, be sequestered and impounded for the benefit of the holders of the bonds secured by the mortgage. This petition and a second one of similar import were denied by the district court and its order was affirmed by this court. Central Hanover B. & T. Co. v. Philadelphia & R. C. & I. Co., 3 Cir., 99 F.2d 642.

Included in the property of the debtor covered by the mortgage are 52,492 shares of the capital stock of Locust Gap Improvement Company and $1,087,000 principal amount of first mortgage bonds of Preston Coal & Improvement Company. The debtor owns over 99% of the stock of Locust Gap Improvement Company and over 95% of the stock of Preston Coal & Improvement Company. Although these stocks and bonds were pledged under the mortgage given by the debtor to Central Hanover Bank & Trust Company as trustee, the mortgage provided that the debtor should be entitled to receive all dividends and interest paid thereon prior to default and all such payments of dividends and interest were made to the debtor prior to the filing of its petition for reorganization. In May, 1937, Preston Coal & Improvement Company paid an installment of interest upon its bonds in the amount of 2% and in November, 1937, made a similar payment. Both payments were made to the debtor. Between July, 1937, and July, 1938, Locust Gap Improvement Company paid dividends upon its stock aggregating $2.06 per share. These payments were likewise made to the debtor. The debtor having refused to turn these payments over to it, the mortgage trustee filed its petition in the district court for an order directing the debtor to pay over to it the amount of the dividends and interest thus received and any future dividends and interest received on the pledged stocks and bonds. The district court denied

the petition and the present appeal by the mortgage trustee followed.

On the prior appeal this court decided that the mortgage trustee was not entitled to have substantially all the current income from the debtor's mortgaged property sequestered for the benefit of the mortgage bondholders, since such action would so impede the debtor's operation as a going concern as to render well nigh impossible its reorganization as such and thus defeat the very purpose which Section 77B was designed to accomplish. It is urged by the debtor that our prior decision rules the present case. The mortgage trustee on the other hand urges that there is a distinction to be drawn between the income from mortgaged real estate and that derived from pledged securities and that upon default of the debtor the mortgage trustee was entitled to the income from the pledged securities as a matter of right. As we have seen, the income from the pledged securities was by express provision of the mortgage payable to the debtor prior to default. Consequently when the petition for reorganization was filed the debtor was as much in enjoyment of the income derived from the pledged securities as of the income derived from the mortgaged real estate. The injunction entered by the district court at that time restrained interference by the mortgage trustee with the one as much as with the other. The rule announced in our prior decision was applied to all the income of property subject to the mortgage without regard to whether it was derived from securities or real estate.

◼ The argument of the mortgage trustee is based upon the proposition that it is entitled to enforce its common law right as pledgee to the increment of the pledged securities.[1] However, it overlooks the fact that it gave up this right by express agreement with the debtor. We do not think that any distinction of legal significance may be drawn between the right of a pledgee to recapture this income upon default and the similar right reserved by a mortgagee. Both must yield to the necessity of preserving intact the business and property of the

debtor to the extent reasonably necessary to afford an opportunity for reorganization. Otherwise the effective administration of Section 77B (and its successor Chapter X, 11 U.S.C.A. § 501 et seq.) might depend upon whether the principal assets of a corporation seeking reorganization consisted of real or personal property.

◼ As we pointed out in the prior case the district court in refusing to permit the mortgage trustee to sequester the income which the debtor had theretofore been receiving did not deprive it or the bondholders it represents of a property right in violation of the Fifth Amendment. On the contrary the right of the mortgage trustee ultimately to receive the income of the mortgaged and pledged property, to the extent necessary to satisfy the claims of the bondholders, became fixed on February 26, 1937, the day the petition for reorganization was approved by the court, and was thereafter subject only to the payment of the proper expenses of the operation of the debtor's business and the administration of its estate and to the terms of the plan of reorganization when and if approved and confirmed by the court. The custody of the income in the interim is obviously a matter of remedy and not of right since it was in any event subject to necessary operating and administration expenses.

◼◼ It is further argued that the debtor has ample other funds with which to carry on its business pending reorganization, that the dividends and interest herein involved are not needed for that purpose and that the rule laid down in our former decision is, therefore, inapplicable. Since that rule is founded upon the necessities involved in continuing the operation of a debtor as a going concern, it would follow that if those necessities are shown to be nonexistent the rule would cease to be applicable. But the necessities of a debtor in process of reorganization are often, as here, largely dependent upon the vicissitudes of its business in an uncertain future. To appraise those necessities with accuracy is impossible. Consequently a wide discretion is, and necessarily must be, vested in

---

[1] Had nothing been said in the mortgage agreement as to the respective rights of the parties to the income from the pledged securities the pledgee might have been entitled thereto by operation of law. Peoples-Pittsburgh Tr. Co. v. Saupp, 320 Pa. 138, 182 A. 376, 103 A.L.R. 844; Boyd v. Conshohocken Mills, 149 Pa. 363,

24 A. 287; Railroad Credit Corporation v. Hawkins, 4 Cir., 80 F.2d 818, certiorari denied 298 U.S. 667, 56 S.Ct. 750, 80 L.Ed. 1390; National Bank of Commerce v. Equitable Trust Co., 8 Cir., 227 F. 526; Fletcher Cyc. Corp., Perm. Ed., § 5382.

the district court with regard to applications of the kind now before us. In order to effectuate the policies of the Bankruptcy Act a debtor undergoing reorganization should be permitted to receive and retain during the reorganization proceeding the income from its mortgaged and pledged property which under the terms of the mortgage or pledge it had been permitted to enjoy prior thereto, unless the court is satisfied that the retaking of the income or part of it by the mortgagee or pledgee will not prejudice the operation of the business of the debtor during the reorganization proceeding. In the present case the district court took the view which we have expressed. It said in its opinion: "It would, of course, be possible to modify the original order, if it were made to appear that this particular income was not needed by the Debtor to carry on its business operations, but that has not been shown to be the fact and, from what this Court knows of the debtor's situation, in all probability could not·be." We are satisfied that the district court did not err in so concluding upon the present record.

The order of the district court is affirmed.