**In re INDUSTRIAL OFFICE BLDG. CORPORATION.**

Nos. 9736, 9738.

United States Court of Appeals Third Circuit.

Argued Dec. 9, 1948.

Decided Jan. 3, 1949.

Israel B. Greene and James R. E. Ozias, both of Newark, N. J., for appellants.

George Furst, of Newark, N. J., for trustee Robert Carey.

George Zolotar, of New York City, for Securities and Exchange Commission.

Milton Loewe, of New York City, for Independent Committee for Industrial Office Building Corporation First Mortgage Bonds.

Before BIGGS, Chief Judge, and McLAUGHLIN and O'CONNELL, Circuit Judges.

BIGGS, Chief Judge.

The appeals in the instant cases were taken respectively by the debtor corporation, Industrial Office Building Corporation, and by holders of Cumulative 7% Income notes issued by the debtor from an order entered by the court below on May 19, 1948 authorizing and directing the trustee of the debtor to pay 6% to the holders of the First Mortgage bonds of the debtor "* * * as an interim distribution, which distribution shall be applied against the principal amount due on each of said bonds; such distribution * * * [being] directed without final determination of the rights of any creditor or any class of creditors to free assets, if any, and the Court [reserving] jurisdiction to determine finally the rights of any creditor or any class of creditors with respect to any cash assets, and to make such equitable adjustment among creditors or classes of creditors as may become necessary by reason of this interim distribution * * *." The appeals at bar followed and applications were made to this court to stay the execution of the order by the court below. We heard the applications for stay but denied them. The 6% distribution was then made by the trustee.

█ Thereafter and on October 11, 1948 an application was made for a further distribution of 10% to the first mortgage bondholders. The court below withheld action on this later application pending the disposition of the instant appeals, expressing some doubt as to whether an interim distribution is authorized by Chapter X of the Bankruptcy Act of 1938, as amended, 11 U.S.C.A. § 501 et seq. It should be pointed out that the appeals at bar are not moot for the reason that any payments, if unauthorized by law, made pursuant to the order of May 19, 1948 would be recoverable by the trustee either by way of suits against individual first mortgage bondholders or by way of readjustments under the plan of reorganization soon to be filed.

A brief recapitulation of the pertinent facts is necessary. The debtor filed its petition for reorganization pursuant to Chapter X on October 3, 1947 and on the same day the court below made an order adjudging the petition to be filed in good faith and in accordance with the provisions of the Bankruptcy Act. The debtor's business consists of the ownership and operation of a large office building, Industrial Office Building, in the City of Newark, New Jersey. The building is completely rented with the exception of a small part of the basement. A portion of the building was used by the State of New Jersey as office space for various courts and agencies of the State, including Chancery court rooms and chambers. Under the reorganization of the Courts of New Jersey, effected by the new Constitution of that State, the Chancery court rooms and chambers will become vacant and extensive alterations will be necessary in order to make the space available for ordinary office purposes. It is estimated that these alterations will require the expenditure of about $100,000. Moreover, few major repairs could be made to the building during the period of World War II and a special reserve of approximately $136,000 was set up upon the debtor's books in order to effect such repairs. But estimating generously it would appear that no more than $250,000 will be required to put the building in condition for continued, uninterrupted occupancy.

The debtor's liabilities total approximately $3,760,000, and consist of first mortgage bonds in the principal amount of $1,954,000, plus interest arrearages as of the maturity date of approximately $1,063,000; three unsecured claims aggregating approximately $10,000; and 7% cumulative income notes, due June 1, 1948, in the

principal amount of approximately $359,-000, plus interest accrued to October 3, 1947 in the approximate amount of $401,-000.

The bonds as indicated are secured by a mortgage on the office building and the mortgage indenture contains the usual provisions pledging the income from the mortgaged property upon default. The income notes are completely subordinate to the bonds, payment on the notes by the latter's express terms being prohibited until all the bonds are paid. A majority of the notes is held by a testamentary trust which also holds the controlling block of the debtor's common stock. The validity of the mortgage or of the bonds issued thereunder is in nowise contested.

The trustee has been receiving by way of net income from rentals sums in excess of $20,000 a month and he is presently engaged in negotiations of present leases for higher rentals. At the commencement of the proceedings the fund of cash held by the trustee amounted to almost $293,000. This fund, augmented by the rental income, increased to about $432,000 by March 31, 1948 and to about $448,000 by the end of the following month. If the distribution had not been made pursuant to the order subject to review the fund would have amounted to about $557,000 by September 30, 1948. The amount of the distribution made pursuant to the order appealed from was approximately $120,000.

The appellants attack the order appealed from on two grounds. They argue in substance (1) that the court below was without power to make an ad interim distribution during the course of the Chapter X proceedings, and (2) that the ad interim distribution or distributions will so hamper the adoption of a plan of reorganization as to render reorganization difficult or impossible. We will deal with these arguments in the order in which they are offered.

The first is based upon the conception that a bankruptcy court must hold every debtor-creditor relationship completely in statu quo pending the submission, approval and execution of a plan of reorganization or until such time as the court may determine that no reorganization is feasible.

The debtor contends that Fidelity Assurance Ass'n v. Sims, 318 U.S. 608, 621, 63 S.Ct. 807, 813, 87 L.Ed. 1032, is dispositive of the issue presented, relying on the language of Mr. Justice Roberts that "* * the * * * [Bankruptcy Act] does not contemplate a liquidation in a Chapter X proceeding but a liquidation in ordinary bankruptcy or a dismissal outright." The debtor relies as well on the decision of the Court of Appeals for the Second Circuit in Re Realty Associates Securities Corporation, 163 F.2d 387, 390. The debtor asserts (as do the note holders) that since the order appealed from authorized and directed a distribution of 6% on the principal amount of the bonds that this is in fact and in legal effect a partial liquidation. Therefore, it is urged, since the purpose of Chapter X is reorganization and not liquidation, no partial liquidation can be brought within the authority conferred on the court by Chapter X.

The authorities cited do not sustain the argument. In the Fidelity Assurance Ass'n case the Supreme Court held only that the petition of the debtor should be dismissed since it was not filed in good faith and that the provisions of Chapter X were attempted to be availed of only as a means toward actual liquidation. In the Realty Associates case the Court of Appeals for the Second Circuit was merely passing inter alia upon the application of the "judgment theory" in a Chapter X proceeding.

We have found no decision by an appellate tribunal which rules the question presently before us. However, in Re Philadelphia & Reading Coal & Iron Co., 3 Cir., 117 F.2d 976, 978, 979, this court pointed out in affirming an order denying payment to bondholders of dividends and interest that "* * * a wide discretion is, and necessarily must be, vested in the district court with regard to applications of the kind now before us." See also our later decision in the same case at 3 Cir., 141 F.2d 954. It should be noted that a plan of reorganization within the meaning of Chapter X may be a plan of liquidation. See In re Lorraine Castle Apartments Bldg. Corporation, 7 Cir., 149 F.2d 55, certiorari denied 326 U.S. 728, 66 S.Ct.

35, 90 L.Ed. 432; Country Life Apartments v. Buckley, 2 Cir., 145 F.2d 935. See also In re Midland United Co., D.C. Del., 58 F.Supp. 667. We can perceive neither provision nor intent in Chapter X which would prevent a bankruptcy court as a court of equity from giving creditors the benefit of their contract rights to the extent that this may be accomplished consistently with the preservation of the going concern value of the real estate when reorganization is contemplated. To hold otherwise would be to so circumscribe the techniques available to a bankruptcy court as to render administration difficult.

 In the absence of specific legislative direction to the contrary the provisions of Chapter X must be construed like those of other reorganization statutes or procedures. The matter was well put by Judge Moscowitz of the District Court of the United States for the Eastern District of New York in Application of Realty Associates Securities Corp., 58 F.Supp. 220, 221, when he stated, "The fundamental purpose of a proceeding under Chapter X * * * as contrasted to a straight bankruptcy, is the preservation of the going-concern value of the business of the debtor. If the interests of all those concerned in the proceeding are best served by the retention of all the assets in the hands of the Trustees until a plan has been offered, that should be done, but where, as here, the Trustees possess assets in an amount more than sufficient to permit the continuance of the debtor's regular business, it is entirely consistent with the purposes of Chapter X that such excess should be distributed to bondholders, whether or not a plan has been proposed, and the Court clearly has the authority to do so." The circumstances of the case cited seem on all fours with those of the instant case. We entertain no doubt that the court below had the power to make the distribution ordered by its decree of May 19, 1948 and that it may make such further and other distributions as are warranted by the circumstances.

 As to the appellants' second contention, we cannot say that the court below abused its discretion in authorizing the interim distribution. The appellants have failed to show either that the payment made or the payment contemplated would render reorganization impractical or not feasible. Indeed, on the facts presented, were we to make a de novo finding, we would conclude as did the court below that distributions to the bondholders were proper.

Accordingly the order appealed from will be affirmed.